# Commonwealth of Pennsylvania *v.* Higgins et al., Appellants.

*Criminal law—Breaking and entering with intent to commit felony—Presumption of fact—Inference for jury.*

In the trial of an indictment for felonious entry, larceny, etc., the evidence established that a jewelry store was entered from an adjacent store by cutting the plaster board partition. There was also evidence that one of the defendants had purchased a knife resembling the one found near the cut in the wall, and had borrowed the key to the adjacent store, and that the other defendant had had a duplicate key made. In such case it was error to charge that the law raises a presumption of guilt from these facts and to give what amounted to binding instructions as to the verdict which must result from the unexplained possession of the tools which might have been used in the perpetration of the crime. The inference to be drawn from these facts was for the jury.

Argued March 14, 1927.   Appeals Nos. 124 and 125, April Term, 1927, by defendants from judgment and sentence of Q. S. Erie County, November Sessions, 1926, No. 25, in the case of Commonwealth of Pennsylvania v. John P. Higgins and Carl Benton. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Indictment for breaking and entering building with intent to commit a felony, larceny and receiving stolen goods. Before ROSSITER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty and sentence on first and second counts. Defendants appealed.

*Errors assigned* were refusal of motion for new trial, refusal to direct verdict for defendants and the charge of the court.

*William J. Carney,* and with him *J. R. Haighney,* for appellants.

*O. J. Graham,* Assistant District Attorney, and with him *M. Levant Davis,* District Attorney, for appellee.

OPINION BY PORTER, P. J., April 27, 1927:

The appellants were jointly indicted, tried and convicted in the court below; the assignments of error in this court are identical and the appeals may be properly disposed of by one opinion. The first count of the indictment charged that the defendant did break and enter a building with intent to commit a felony, the second count charged larceny, and the third count charged receiving stolen goods. The trial resulted in a verdict of guilty on the first and second counts and the court imposed sentence upon the defendants.

The store of a jeweler in the City of Erie was, on August 30, 1926, entered and a large amount of valuable jewelry therefrom stolen. Access to the store was obtained by cutting through a thin partition wall, composed of what some of the witnesses designated as "plaster board," from an adjoining store-room which had for some time been vacant. When the crime was discovered there were found near the hole which had been cut through the wall a linoleum knife, a hatchet and chisel. The evidence upon which the Commonwealth sought to fix the crime upon these defendants was purely circumstantial. Miss Wright, who was employed by the owner of the vacant store building, adjoining the jewelry establishment, testified that on Friday afternoon, about three or four o'clock, August 27, 1926, a young man came to the office and asked if Mr. Ostrow owned the vacant building and whether it was an L shaped store; that she said she didn't know and offered to give him the key to go in and look at it, that he took the key and returned it "in half an hour or twenty minutes." She testified that Higgins looked very much like the young man who obtained the key; that she had picked Higgins out at a line-up of several men at police headquarters

as "the man that looked like the man that got the key"; that she at that time thought he was the man and still thought so, but, on cross-examination, when asked if she could positively identify Higgins, she said: "I couldn't swear to it. I picked him out of a line. I didn't know Mr. Higgins but I picked him out of a line-up as a man that looked like the man." P. L. Chase testified that on a Friday a short time before August 30th, (when the crime was committed) a man brought into the hardware store where the witness was employed a key of which he wished to have a duplicate made; that the witness made the duplicate and told the man that if it was not satisfactory to bring it back in the afternoon and he would make another; that this occurred before he went to his luncheon at 11.30 A. M.; that after he returned from lunch the key was brought back by another man and he made a second key from the same model. This witness testified that he had, at the police station, "partially identified" Benton as the man who brought in the key in the forenoon; and that Mr. Benton looked very much like the man. He testified that Benton looked very much like the man who came in in the forenoon with the key but that it was not the same man who brought in the key in the afternoon, and that he could not identify the man who came in the afternoon. This evidence was offered for the purpose of attempting to show that these defendants had procured the means of access to the vacant store-room, from which entrance to the jewelry store was effected. If it be conceded that Benton was identified to the satisfaction of the jury as the man who had a duplicate of some key made and that Higgins was identified as the man who obtained from Miss Wright the key to the vacant store, there still remains grave reason to doubt whether the evidence was sufficient to warrant a finding that the defendants, acting in concert,

had obtained a duplicate of the key which would afford them access to the vacant store. The testimony, above quoted in substance, would, if the witnesses were not mistaken, tend to establish that Benton had procured a duplicate of some key to be made in the forenoon of Friday, August 27, 1926, but it would further establish that Higgins did not obtain possession of the key to the store until the afternoon of that day, so that the key which Benton took to the locksmith could not have been the key which Higgins subsequently procured from the office of the owner of the building. It was testified that the lock on the vacant store was one in common use, but certainly all locks made by the same manufacturer are not to be opened by the same key. But further, the duplicate key which the Commonwealth contends was made for Benton was never found and there was no evidence in the case which would have warranted a finding that that key would have opened the door of the vacant store. The Commonwealth also produced evidence which attempted to establish that the linoleum knife, which had been used in cutting through the partition between the vacant store and the jewelry establishment had been bought by Benton a few days before the commission of the crime. Miss Brabender, a clerk in the Palace Hardware house, testified that she had sold a knife similar to that in question a few days prior to the commission of the crime and that the knife found in the vacant store had upon it the price mark of the establishment in which she was employed. It thus appeared that the knife in question was one of a lot which the hardware house carried in stock and there was no evidence in the case which indicated that such knives were not in the hands of many persons. When this witness was asked if she could identify either of the defendants as the man who had purchased the knife, she replied: "I thought Mr. Benton looked

like the man, but I am not sure enough to say he is the man.'' This was the only competent evidence in the case upon which to base a finding that these defendants or either of them had possession of the knife which was found in the vacant store after the crime was committed. An attempt was made to establish that Higgins had bought a hatchet and chisel, found in the vacant store, at the ''Grant store,'' in Erie, but the evidence in support thereof was absolutely incompetent, as hearsay. Two witnesses testified that Miss Wilkins, a clerk in the Grant store, had identified a picture of Higgins as that of the man to whom she had sold the hatchet and chisel. Miss Wilkins was not called as a witness and that no weight should be given to the testimony of these two witnesses as to what she had identified is too clear for discussion. It was not shown that the hatchet and chisel in question had come from the Grant store and the evidence indicated that they were merely articles in common use in the possession of many people. It was on this circumstantial evidence that the defendants were convicted. The court charged the jury as follows: ''we say to you that if you believe beyond a reasonable doubt that this knife was purchased by one of these defendants, and this hatchet and chisel by one of these defendants, and one of these defendants had the key, if you believe beyond a reasonable doubt that these articles were found there, it would raise a presumption of guilt against these defendants, and we say to you that there is no evidence to overcome that presumption, if you believe it beyond a reasonable doubt. The question for you to determine is whether or not there is a reasonable doubt as to the identity of the party who got the keys, as to the identity of the party who got the hatchet and chisel, and as to the identity of the party who got the knife, bearing in mind that the law does not require you to be absolutely certain.''

The jury after having deliberated sometime returned to the court room for further instructions, when the court instructed them, upon the point in question, as follows: "The proposition of that is that if you find beyond a reasonable doubt ...... that these articles were purchased by these defendants, that raises the presumption that they were there at that time and using that knife: the law raises that presumption— practically the same presumption as is raised by the man found in possession of stolen property. When you find a man in possession of stolen property, the law raises a presumption,—the law says that a man who is found in the possession of stolen property is presumed to be the thief unless he satisfactorily explains how he came in possession of that property. If that presumption is not overcome then of course the verdict would be guilty. That is the same principle as applies in this case." These instructions are assigned for error. Even if it be conceded that Benton was the man who in the forenoon of August 27th had caused to be made a duplicate of a key, which was not shown to be the key of the vacant store, that Higgins had subsequently obtained possession of the key of the store and had retained that possession for twenty or thirty minutes and that Higgins had a few days before the perpetration of the crime purchased a linoleum knife similar to the one which was found in the store, the law did not raise a presumption that the defendants were guilty of the crime charged. The inference to be drawn from such facts was for the jury. It may be, in the present case, that the Commonwealth is able to establish facts which would warrant the jury in finding that the witnesses were mistaken as to the exact hour when Benton took a key to the locksmith to have a duplicate made, or as to the exact time during which Higgins had possession of the key to the vacant store, and thus disclose that

the parties were really acting in concert in obtaining possession of a duplicate key to the store. If this be assumed, the force of the presumption of guilt is still one of fact to be inferred by the jury, not of law, and the jury must pass on all the evidence. The inference to be drawn from the fact of the possession of the articles in question by the defendants, taking into consideration all the circumstances, was, in the present case, peculiarly for the jury. The error of the learned judge consisted in giving a practically binding instruction as to the verdict which must result from the unexplained possession of tools which might have been used in the perpetration of the crime: Commonwealth v. Chester, 77 Pa. Superior Ct. 388, and decisions there cited. As the case is to be retried, it is here proper to say that the jury should be carefully instructed as to the facts with regard to the possession of the key to the vacant store by Higgins and the obtaining of a duplicate of some key which Benton took to the locksmith. If Benton took a key to the locksmith in the forenoon of August 27th and Higgins did not obtain possession of the key until the afternoon of that day, then it seems very clear that the key which Benton took to the locksmith could not have been the key to the vacant store. The first and eighth assignments of error are sustained. The other assignments of error do not require special consideration.

The judgment is reversed and a venire facias de novo awarded.